UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MARTIN L. MANLEY,

        Plaintiff,                Case No. 1:10-cv-929

v.                                          Honorable Gordon J. Quist

T. WOLVEN,

        Defendant.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated in the Richard A. Handlon Correctional Facility. In his *pro se* complaint, Plaintiff sues Michigan Department of Corrections (MDOC) Hearing Officer T. Wolven.

Plaintiff's complaint concerns major misconduct convictions arising from an incident that occurred on April 13, 2010. Officer Butler issued a major misconduct report for assault on staff and possession of a weapon. Butler described the violations as follows:

> While shaking down prisoner Manley #207599 upon reaching into his front right pants pocket I found a razor blade from a disposable razor broken off wrapped in toilet paper. He started to pull away from me. I stated "I need to finish the shakedown." Manley got more violent in his attempt to break away and ground the hand cuffs together on my fingers and booted [kicked] me causing me intense pain. Then McQuillan and I placed him on the floor to gain control and prevent another assault.

(4/13/10 Major Misconduct Report, Page ID#15.) Plaintiff provides a somewhat different version of the events in his complaint. He alleges that during a search, Officer Butler reached into Plaintiff's front right pocket and brought out some toilet paper. When Plaintiff tried to look back at Butler, he told Plaintiff to keep facing forward. Plaintiff complied, but a few seconds later, he turned around again and saw Butler holding a razor in his hand. Plaintiff protested that he did not have a razor blade, which Butler interpreted as Plaintiff resisting. Plaintiff claims that Butler grabbed him by the back of his coat collar. Plaintiff pulled away because he did not believe that Butler's conduct was justified. As Butler continued to pull Plaintiff by the collar, Officer McQuillan grabbed Plaintiff's legs and took him to the floor. Plaintiff claims that Butler kneed him twice in the head and then kept his knee on Plaintiff's head until other officers arrived.

Plaintiff denies any knowledge of the razor blade in his pocket. He contends that Officer Butler planted the razor on him and was motivated to do so because Plaintiff had complained about Butler calling him an inappropriate name. At Plaintiff's request, the hearings investigator obtained various documents, statements and answers to interrogatories. The hearing investigator received written statements from two other prisoners who claimed that Officer Butler took some toilet paper out of his shirt pocket before he reached into Plaintiff's pant pocket and came out with a razor wrapped in toilet paper. In response to interrogatories, Officer McQuillan stated that he saw Plaintiff resist Butler, but did not see Plaintiff assault Butler because McQuillan was on the other side of Plaintiff. In what appears to be an alternative theory, Plaintiff claims that he was wearing a pair of used pants that he had just received from the quartermaster. Plaintiff suggests that the razor blade could have been in the pants when he received them, although he did not feel anything in the pocket.

On April 21, 2010, Plaintiff received notice that the charge of possession of a weapon was changed to possession of dangerous contraband. Defendant Wolven conducted the misconduct hearing two days later on April 23, 2010. After reviewing the evidence, the hearing officer found Plaintiff guilty of assault on staff and possession of dangerous contraband. Defendant provided the following reasons for his findings:

> Hearing Officer finds based on the statement of the reporter Officer Butler that his prisoner Manley was shakendown [sic] and in his front pants pocket was found a razor blade wrapped in toilet paper. Hearing officer viewed photo of that item, it is a blade removed from plastic, and by definition dangerous contraband. Therefore, Manley is found guilty of charge 2. Hearing officer does not believe that Officer Butler planted this in the prisoner's pocket[.] [T]he claim of Manley in his first statement was not that the officer put it there, it was he did not know it was there as he had just gotten those patns [sic] from [the] quartermaster and did not [f]eel it in his pocket. He would certainly have felt it then if the officer placed it in [his] pocket and then pulled it out. Furthermore, were the officer to have planted this, it is not likely that he would pull it out of his pocket in front of inmate Higgins and inmate

3

Habern and then place it in Manley's pocket and pull it back out when the reporter could simply have pulled his hand out of Manley's pocket and put it in his own saying he had found the tissue and put it in his own pocket till the shakedown was compete. Therefore, Manley is found guilty of possession of dangerous contraband.

Hearing officer further finds as stated by the reporter Butler that [M]anley did physically resist him during the shakedown, pulling away from the officer punching [sic] his hands in the cuffs and kicking him. Hearing Officer finds that these acts of physical resistance were intended to abuse the reporter therefore Manley is guilty of assault and battery. Hearing officer finds the reporter Butler's charge credible, for Officer McCullough who was requested as a witness by Manley himself said although he did not see the hands pinched, he did see Manley attempted to pull away, and pinching hands in the restraints would be the normal result of such pulling when the victim has hold of the cuffs. This hearing officer further believes that Manley did kick the reporter in an attempt to make him let go of the cuffs so Manley could break free. Therefore, Manley is found guilty of assault and battery.

(4/23/10 Major Misconduct Hearing Report, Page ID#22.) As a result of his misconduct convictions, Plaintiff was given thirty days loss of privileges and forfeited twenty-five days of good time.

Plaintiff contends that Defendant's interpretation of the events shows his bias in favor of the reporting officer and claims that Defendant reached a decision that was not supported by a preponderance of the evidence in violation of the Due Process Clause. He seeks declaratory and injunctive relief, including an order requiring the MDOC to remove the major misconduct convictions and restore his good time credits. He also seek punitive damages of $1,500.[1]

---

[1] The Sixth Circuit has held that MDOC hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from a prisoner's claim for monetary damages for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Accordingly, Defendant Wolven is immune from Plaintiff's claim for monetary damages.

**Discussion**

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendant Wolven was biased in favor of the reporting officer and that his misconduct convictions were not supported by a preponderance of the evidence in violation of his due process rights. The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. The written statement required by *Wolff* enables reviewing courts to obtain a record demonstrating that the prison disciplinary hearing was conducted fairly. *See Hensley v. Wilson*, 850 F.3d 269, 277 (6th Cir. 1988). The Supreme Court set forth the standard for the quantum of evidence that must appear in the written statement explaining a disciplinary action:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *United States ex rel. Vajtauer v Commissioner of Immigration*, 273 U.S. [103] at 106, 47 S.Ct. 302, 71 L.Ed. 560 [1927]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; *United States ex rel. Tisi v. Tod*, 264 U.S. 131, 133-134, 44 S.Ct. 260 [260-261], 68 L.Ed. 590 (1924); *Willis v Ciccone*, 506 F.2d 1011, 1018 (8th Cir. 1974). We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See *Wolff*, 418 U.S., at

> 562-563, 567-569, 94 S.Ct. 2963 [2977-2978, 2980-2981], 41 L.Ed.2d 935, 71 Ohio Op.2d 336. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, *id.*, at 556 [94 S.Ct., at 2974], and neither the amount of evidence necessary to support such a conviction, see *Jackson v Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), nor any other standard greater than some evidence applies in this context.

*Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). Thus, a prison disciplinary decision should be upheld so long as "some evidence" in the record supports the decision. *Id.* at 455-56.

In this case, there clearly was some evidence to support the misconduct convictions.[2] Defendant Wolven's decision on both charges was largely based on the credibility of the parties and witnesses. As discussed in *Hill*, *supra*, this Court will not make an independent assessment of the credibility of witnesses as the hearing officer was in the best position to judge their credibility. Plaintiff's claim of bias is not supported by the record. Defendant Wolven considered all of the evidence on the record, including that requested by Plaintiff, in reaching his decision. In addition to Officer Butler's report, Plaintiff's conviction for assault and battery was supported by Plaintiff's own admission that he resisted when Butler grabbed him by his coat collar. Plaintiff's resistance also was confirmed by Officer McQuillan, who assisted Butler in taking Plaintiff to the ground to subdue him. Plaintiff makes much of the fact that Butler did not seek medical treatment, but the assault alleged by Butler - having his fingers ground in the restraints and being kicked - could have inflicted pain without causing injuries requiring medical attention. With regard to the conviction for possession of dangerous contraband, Defendant provides a clear explanation for crediting Officer Butler's version of the events. Among other things, Plaintiff provided two different explanations

---

[2] To the extent Plaintiff claims that the misconduct convictions did not meet the evidentiary standard required under state law, i.e., were not proven by a preponderance of the evidence, §1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

7

for how the razor blade got into his pocket. Because there was some evidence to support Defendant Wolven's decision, Plaintiff's due process claim must fail.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: November 19, 2010              /s/ Gordon J. Quist
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE